UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC LESANE,

                              Petitioner,

                  - v. -

UNITED STATES OF AMERICA,

                              Respondent.

**ORDER**

15 Civ. 3403 (PGG)

12 Cr. 524 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On September 27, 2012, Petitioner Eric Lesane pled guilty to felon in possession

of a firearm, in violation of 18 U.S.C. § 922(g).  The single count to which Lesane pled guilty

states that the firearm that Lesane possessed had a defaced serial number, and references 18

U.S.C. § 922(k) in addition to 18 U.S.C. § 922(g).  (Indictment (Dkt. No. 5))[1]

On October 25, 2013, this Court sentenced Lesane to 94 months' imprisonment

and three years' supervised release.  (See Judgment (Dkt. No. 24))  Lesane has moved, pursuant

to 28 U.S.C. § 2255, to vacate his sentence on various grounds, including that his guilty plea was

deficient.  (Pet., No. 15 Civ. 3403, (Dkt. No. 1))

Lesane contends that

(1) a Pimentel letter provided by the Government prior to his guilty plea constitutes a
    plea agreement, and that the Government breached that alleged agreement by arguing
    at sentencing for an offense level, criminal history score, and sentencing range
    inconsistent with those set forth in the Pimentel letter;

(2) he was sentenced as if he had pleaded guilty to a violation of 18 U.S.C. § 922(k) –
    which makes it unlawful "for any person knowingly to transport, ship, or receive, in
    interstate . . . commerce, any firearm [with a defaced serial number]" – when he never
    admitted to knowingly possessing a firearm with a defaced serial number;

---

[1]  Unless otherwise indicated, all docket citations are to the docket in 12 Cr. 524 (PGG).  Page
citations reflect pagination as shown on this District's Electronic Case Filing system.

(3) his guilty plea was insufficient because he did not admit the interstate commerce element;

(4) a four-level Sentencing Guidelines enhancement for possessing a firearm with a defaced serial number was improperly imposed;

(5) his Criminal History Category was improperly calculated, because the Court relied on New York State youthful offender adjudications in calculating his criminal history score;

(6) his lawyers in the district court and on appeal were constitutionally ineffective, because they did not properly present Lesane's arguments concerning these points; and

(7) his sentence must be vacated because it was imposed in accordance with the "residual clause" then found in the Sentencing Guidelines, and the Guidelines "residual clause" is unconstitutionally vague under Johnson v. United States, __ U.S. ___, 135 S. Ct. 2551 (2015).

(Id.; Lesane Br., 15 Civ. 3403 (Dkt. No. 37))

As discussed below, the Pimentel letter the Government provided before Lesane's plea does not constitute a plea agreement. Accordingly, the Pimentel letter provides no basis for habeas relief. Lesane's argument concerning the interstate commerce element is also misplaced, because defendants pleading guilty to felon-in-possession are not required to state, in their allocution, that the firearm traveled in interstate commerce. The Court may rely on a proffer from the Government as to the interstate commerce element. The Court further concludes that the four-level Sentencing Guidelines enhancement for possessing a firearm with a defaced serial number was properly imposed, because the enhancement does not require proof that the defendant knew that the firearm he possessed had a defaced serial number. The youthful offender adjudications were also properly addressed at sentencing. Indeed, the Second Circuit rejected Lesane's arguments to the contrary in his direct appeal. See United States v. Lesane, 579 Fed. Appx. 51 (2d Cir. 2014) For these same reasons, none of Lesane's lawyers in the district court or on appeal were constitutionally ineffective in failing to make the arguments he

raises in his Petition. Finally, <u>Johnson</u> has no application to the "residual clause" found in the 2012 version of the Sentencing Guidelines.

    The Court agrees, however, that – to the extent that the judgment indicates that Lesane was convicted of violating 18 U.S.C. § 922(k) in addition to 18 U.S.C. § 922(g) – an amended judgment must be filed making clear that Lesane's conviction only addresses a violation of 18 U.S.C. § 922(g). Lesane is entitled to no additional relief, because the Court – in sentencing Lesane – did not act in the mistaken belief that he had pleaded guilty to a violation of 18 U.S.C. § 922(k). The reference to 18 U.S.C. § 922(k) in the judgment was a clerical error. As noted above, the Sentencing Guidelines four-level enhancement for possessing a firearm with a defaced serial number was properly imposed, because that provision does not require proof that a defendant knew that the firearm he possessed had a defaced serial number.

    Accordingly, Lesane's petition will be granted to the extent that an amended judgment will be filed that contains no reference to 18 U.S.C. § 922(k). Lesane's petition will otherwise be denied.

**BACKGROUND**

**I.       FACTS AND PROCEDURAL HISTORY**

> **A.       Indictment, Plea, and Sentencing**
>
> > **1.       Indictment**
> >
> > The Indictment reads as follows
> >
> > COUNT ONE
> >
> > The Grand Jury charges:
> >
> > 1.       On or about June 2, 2010, in the Southern District of New York, ERIC LESANE, a/k/a "Eric Lasane," a/k/a Omega," the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, a firearm, to wit, a HiPoint, Model 995, 9 millimeter Luger caliber rifle, with a defaced serial number, which previously had been shipped and transported in interstate and foreign commerce.
> >
> > (Title 18, United States Code, Sections 922(g)(1) and (k).)

(Indictment (Dkt. No. 5) ¶ 1)  The Indictment thus charges Lesane with two offenses in a single

count:  (1) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and (2)

possessing a firearm with a defaced serial number, in violation of 18 U.S.C. § 922(k).  (Id.)

> > **2.       Guilty Plea**
> >
> > > **a.       Pimentel Letter**

On July 13, 2012, the Government sent a Pimentel letter to Lesane's counsel.

(Pimentel Ltr., No. 15 Civ. 3403 (Dkt. No. 39-1) at 1)  The first sentence in the Pimentel letter

states:  **"This document is not a plea agreement."**  (Id.)  The Pimentel letter sets forth the

following analysis of how the 2011 Sentencing Guidelines apply to Lesane's offense:

> > 1.       The sentencing guideline applicable to the offense charged in Count One is U.S.S.G. § 2K2.1.  Pursuant to U.S.S.G. § 2K2.1(a)(4)(B), the base offense level is 20 because the defendant committed the instant offense subsequent to sustaining a felony conviction for a crime of violence, to wit, a conviction on or about January 11, 2001, for

Robbery in the Third Degree, a Class D felony, in violation of New York Penal Law Section 160.05

2. Pursuant to U.S.S.G. § 2K2.1(b)(4)(B), an increase of 4 levels is warranted, because the firearm had a defaced serial number.

3. The cumulative offense level determined from the previous paragraphs is 24.

4. Assuming the defendant clearly demonstrates acceptance of responsibility to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a).

5. Furthermore, assuming the defendant has accepted responsibility as described in the preceding paragraph, an additional 1-level reduction is warranted, pursuant to U.S.S.G. § 3E1.1 (b), because the defendant will have given timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the foregoing calculations, the applicable offense level is 21.

(Id. at 1-2)

The Pimentel letter also states that – based on Lesane's prior ten convictions – he has seven criminal history points, placing him in Criminal History Category IV. (Id. at 3)

Finally, the Pimentel letter states that given an offense level of 21 and a Criminal History Category of IV, Lesane's Guidelines sentencing range is 57 to 71 months' imprisonment. (Id. at 4)

The Pimentel letter goes on to state that

The foregoing Guidelines calculation is based on facts and information currently known to the Office. Nothing in this letter limits the right of [the U.S. Attorney's] Office (1) to change its position at any time as to the appropriate Guidelines calculation in this case, even if that change is based, in whole or in part, on information that was in the Government's possession as of the date of this letter; and/or (2) to present to the Court or the United States Probation Office, either orally or in writing, any and all facts and arguments relevant to sentencing that are available to the Office at the time of sentencing. Nor does anything in this letter limit the right of [the U.S. Attorney's] Office to seek a departure under or variance from the Guidelines, or to take a position on any departure or variance

that may be suggested by the Court, the United States Probation Office, or the defendant.

This letter does not and cannot bind either the Court or the United States Probation Office, either as to questions of fact or as to determinations of the correct application of the Guidelines in this case. Instead, the sentence to be imposed upon the defendant will be determined solely by the Court. This Office cannot and does not make any promise or representation as to what sentence the defendant will receive.

(Id. at 4)

### b. Rule 11 Proceeding

On September 27, 2012, Lesane pleaded guilty to the Indictment before Magistrate Judge Gabriel W. Gorenstein. (Plea Tr. (Dkt. No. 8) at 6) Lesane told Judge Gorenstein that he had "had a chance to discuss the charge and how [he] wish[ed] to plead with [his] attorney," and that he was satisfied with his attorney's services. (Id. at 5)

Judge Gorenstein informed Lesane that the charge against him carried a maximum statutory penalty of 10 years' imprisonment. (Id. at 6, 9)

As to the Pimentel letter, Lesane acknowledged that he understood that the sentencing judge was "not bound by the calculation in [that letter]," and that "no matter what range [the sentencing judge] believe[d] [was] called for by the [G]uidelines, that range [would be] just one of many factors he [would] consider in determining [Lesane's] sentence." (Id. at 9)

When Judge Gorenstein asked whether Lesane "underst[ood] that even if [he was] surprised or disappointed by [his] sentence, [he would] still be bound by [his] guilty plea," Lesane answered, "Yes." (Id. at 8)

Judge Gorenstein also asked questions concerning the voluntariness of Lesane's guilty plea:

The Court: Have any force or threats been used, either direct or indirect, to influence any plea today?
Defendant: No.

The Court:  All right, sir.  Have any promises been made to you in order to get you to plead guilty?

Defendant:  No.

. . . .

The Court:  Sir, is your plea voluntary; that is, made of your own free will?

Defendant:  Yes, it is.

(Id. at 8-10)

Judge Gorenstein then asked the Government to recite the elements of the charged offense:

The Court:  . . . I'm going to ask the government to summarize the elements of the offense. . . .

The Government:  Your Honor, the elements of the offense charged in Count One of the indictment are, first, that the defendant knowingly possessed a firearm; second, that the defendant's possession of the firearm was in or affecting commerce; and, third, that prior to the possession of the firearm, the defendant was convicted in any court of a crime punishable by imprisonment by more than one year.

. . . .

(Id. at 10)  The prosecutor did not list a defaced serial number as an element of the 18 U.S.C. § 922(g) offense that Lesane was pleading guilty to.  (Id.)

Judge Gorenstein then elicited a factual allocution from Lesane:

The Court:  All right, sir.  Can you tell me what it is that you did that makes you guilty of this charge?

Defendant:  On June 2nd, 2010, I possessed a firearm in the Bronx.

The Court:  Okay.  And was this a 9-millimeter caliber Luger rifle?

Defendant:  Yes.

The Court:  And did it have a defaced serial number?

Defendant:  I don't know.

The Court:  That's not an element here?

Mr. Statsinger:  No, your Honor.

(Id. at 10-11)  Lesane further acknowledged that he was "convicted for a robbery in 2001, a

Class D felony under New York Penal Law."  (Id. at 11)  The Government "proffer[ed] that the

gun that [Lesane] possessed was not manufactured in New York and, therefore . . . traveled

through interstate commerce."  (Id.)

In recommending that Lesane's guilty plea be accepted, Judge Gorenstein made

the following findings:

> The Court:  . . . On the basis of the defendant's responses to my questions and my
> observation of his demeanor, I find that he is fully competent to enter an informed
> plea at this time.  I also conclude that he understands the nature of the charge and
> the consequences of the plea.  Finally, I'm satisfied the plea is voluntary and has a
> factual basis for it.  Accordingly, I recommend that the proffered plea to Count One
> of the indictment be accepted.

(Id. at 11-12)

To summarize, during the Rule 11 proceeding, no one suggested that Lesane was

pleading guilty to a violation of 18 U.S.C. § 922(k).  When the Government listed the elements

of the offense to which Lesane was pleading guilty, it made no reference to a defaced serial

number.  And when Judge Gorenstein asked whether a defaced serial number on the firearm was

an element of the crime to which Lesane was pleading guilty, defense counsel answered, "No."

### 3.      Presentence Investigation Report

The Probation Office issued a Presentence Investigation Report ("PSR") on

December 18, 2012.  Consistent with the Indictment, the PSR describes Lesane's offense as

"felon in possession of a firearm with a defaced serial number; 18 U.S.C. 922(g)(1) and (k)."

(PSR at 2, 5)

The PSR's Guidelines analysis differs substantially from that set forth in the Pimentel letter. As to criminal history, while the Pimentel letter references ten prior convictions, seven criminal history points, and a Criminal History Category of IV (Pimentel Ltr., No. 15 Civ. 3403 (Dkt. No. 39-1) at 2-3), the Probation Department determined that Lesane had fourteen prior convictions and thirteen criminal history points, which correlates with Criminal History Category VI.[2] (PSR ¶¶ 28-59; see also PSR at 24)

The PSR also arrives at a different total offense level. While the Pimentel letter applies a base offense level of 20, the Probation Department determined that the proper base offense level was 24, because Lesane had two prior felony convictions for crimes of violence.[3] Consistent with the Pimentel letter, the Probation Department (1) imposed a four-level enhancement for a defaced serial number, pursuant to § 2K2.1(b)(4)(B); and (2) granted a three-level reduction for acceptance of responsibility. (PSR ¶¶ 15-22) The PSR concludes that the total offense level is 25 (id. ¶ 23), whereas the Pimentel letter has a total offense level of 21. (Pimentel Ltr., No. 15 Civ. 3403 (Dkt. No. 39-1) at 2)

Offense level 25 at Criminal History Category VI yields a Guidelines range of 110 to 137 months' imprisonment. (PSR ¶ 104) Because the statutory maximum is 120 months'

---

[2] The PSR references two convictions not cited in the Pimentel letter: (1) a June 6, 2001 conviction for Attempted Robbery in the Third Degree, for which Lesane was adjudicated a youthful offender, and for which he received a sentence of 16 months to 4 years' imprisonment; and (2) a June 6, 2001 conviction for Escape in the Second Degree, for which Lesane was adjudicated a youthful offender and for which he received a sentence of 16 months to 4 years' imprisonment. (PSR ¶¶ 38, 40; see also Pimentel Ltr., 15 Civ. 3403 (Dkt. No. 39-1) at 2-3)

[3] Lesane has a June 6, 2001 conviction for Robbery in the Third Degree – for which he was sentenced to 28 months to 7 years' imprisonment and – as noted above – a June 6, 2001 conviction for Attempted Robbery in the Third Degree, for which he was adjudicated a youthful offender, and for which he received a sentence of 16 months to 4 years' imprisonment. (PSR ¶¶ 34, 38)

imprisonment, the Guidelines range is – according to the PSR – 110 to 120 months' imprisonment.  (Id. ¶¶ 103-04)

The PSR describes the offense conduct as follows:

On May 27, 2010, [a confidential source] placed a telephone call to [Lesane] at the direction of law enforcement agents, which was recorded.  During the conversation, the [confidential source] and [Lesane] discussed the [confidential source] purchasing a firearm from [Lesane].

On June 2, 2010, the [confidential source] met with [Lesane] for the purpose of purchasing a firearm.  The meeting, which was surveilled by law enforcement agents from a nearby location, took place at 2784 Valentine Avenue, Bronx, NY, and was recorded using an audio and video recording device.  Additionally, the case agent also spoke with the [confidential source] about the substance of the meeting after it had concluded.

After the [confidential source] entered Apartment #1 of the aforementioned location, he saw two rifles and two pistols on the kitchen table.  Upon meeting with [Lesane] inside of the apartment, [Lesane] picked up a rifle and told the [confidential source] how to use it.  [Lesane] then gave the rifle to the [confidential source] in exchange for $800.  After the transaction had concluded, the [Federal Bureau of Investigations] case agent and other law enforcement agents met with the [confidential source] and took possession of a HiPoint, Model 995, nine-millimeter Luger caliber rifle; one loaded 10-round magazine; and one flash suppressor.  A report subsequently received from the Westchester County Ballistics Unit determined that the rifle had a defaced serial number.

The case agent was subsequently informed by a special agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives, that the rifle sold by [Lesane] to the [confidential source] had never been manufactured in the State of New York.

(Id. ¶¶ 7-10)

### 4. Sentencing Submissions

#### a. Lesane's Sentencing Submission

In his October 9, 2013 sentencing brief, defense counsel states that "Mr. Lesane pled guilty to one count of being a Felon in Possession of a Firearm pursuant to 18 U.S.C. § 922(g)(1)."  (Def. Br. (Dkt. No. 18) at 1)  Defense counsel does not make any mention of a Section 922(k) charge.

In his sentencing brief, defense counsel argues that Lesane's June 6, 2001 youthful offender adjudications for Attempted Robbery in the Third Degree and Escape in the Second Degree do not constitute "adult" felony convictions under U.S.S.G. §§ 2K2.1(a)(4) and 2K2.1(b)(4)(B).  (Id. at 4)  See also U.S.S.G. § 2K2.1 cmt. n.1 ("'Felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year . . . . A conviction for an offense committed prior to age eighteen years is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted . . . .").  Accordingly, Lesane argued at sentencing that he had only one prior adult felony conviction for a crime of violence, and that the proper base offense level is 20, rather than the base offense level of 24 set forth in the PSR.[4]  (Def. Br. (Dkt. No. 18) at 4 (citing U.S.S.G. § 2K2.1(a)(4))  After imposition of a four-level enhancement for a defaced serial number, and a three-level reduction for acceptance of responsibility, defense counsel argued that Lesane's total offense level is 21, and that the resulting Guidelines range is 46 to 57 months' imprisonment.  (Id.)  Defense counsel further argued that the Court should grant a variance down to 40 months' imprisonment, given Lesane's (1) "chaotic and dangerous" home life leading up to "the time of the offense"; (2) rehabilitation efforts during pre-trial detention; (3) "physical and mental health challenges"; and (4) familial obligations.  (Id. at 1-5)

---

[4]  Due to an apparent typographical error, defense counsel's sentencing submission states that the base offense level is "24," instead of 20.  (Def. Br. (Dkt. No. 18) at 4)  But defense counsel argues that § 2K2.1(a)(4) should apply (on the rationale that Lesane has only one prior conviction for a crime of violence), which results in a base offense level of 20.  (Id.)  In any event, at sentencing, the Court understood that defense counsel was advocating for a base offense level of 20, and discussed at length defense counsel's argument that Lesane had only one prior conviction for a "crime of violence."  (Sent. Tr. (Dkt. No. 28) at 4, 8-11)

### b.　　The Government's Sentencing Submission

In its October 15, 2013 sentencing submission, the Government likewise makes no reference to Section 922(k). The Government sought a sentence in "neither the range in the Government's Pimentel letter nor the range calculated . . . in the Presentence Investigation Report." (Govt. Br. (Dkt. No. 20) at 2 n.1) The Government recalculates Lesane's base offense level as 24, not 20 (as set out in the Pimentel letter), to account for the youthful offender adjudications not previously available to the Government. (Id. at 2-3) In response to Lesane's argument that his youthful offender adjudications should not be counted as "adult" convictions, the Government argues that "[t]he Second Circuit has made clear . . . that the ex post designation of a conviction as a 'youthful offender adjudication' under New York law is not the controlling factor in determining whether such convictions should be counted as adult convictions." (Id. at 3 (citing United States v. Cuello, 357 F.3d 162, 168 (2d Cir. 2004))) "Rather, the court held that 'determining whether a New York youthful offender adjudication is classified as an adult conviction under the laws of New York for the purpose of U.S.S.G. § 2K2.1 requires district courts to examine the substance of the prior conviction at issue; to focus on the nature of the proceedings, the sentence received, and the actual time served.'" (Id. (quoting Cuello, 357 F.3d at 168-69))

After applying the four-level enhancement for a defaced serial number and the three-level reduction for acceptance of responsibility – both as set forth in the Pimentel letter – the Government concludes that Lesane's total offense level is 25. (Id. at 1-2) As for criminal history points, the Government argues that the 2001 youthful offender adjudications, as adult convictions, warrant the imposition of criminal history points. (Id. at 4 (citing United States v. Driskell, 277 F.3d 150, 156-57 (2d Cir. 2002))) While the PSR imposes three criminal history

points for each of the two June 6, 2001 youthful offender adjudications, the Government argues that Lesane should receive a total of three criminal history points for both youthful offender adjudications.  (Id. at 3)  The Government points out that "the offenses were not separated by an intervening arrest and the sentences were imposed on the same day" and thus "should not be counted separately."  (Id. (citing U.S.S.G. § 4A1.2(a)(2))  The Government concludes that Lesane has a total offense level of 25 and falls within Criminal History Category V.  (Id.) Offense level 25 and Criminal History Category V yields a Guidelines range of 110 to 120 months' imprisonment.  (Id. at 4)  The Government recommended a 110-month sentence.  (Id.)

In support of its sentencing recommendation, the Government argued that Lesane's "prior periods of incarceration have had little deterrent effect."  (Id. at 5)  Moreover, "[w]hile at Rikers [Island], [Lesane's] telephone calls were recorded. . . . In some of these telephone calls, the defendant proposed different ways of raising the money to post bail . . . [including] the possibility of defrauding other individuals trying to post bail for their family members or friends . . . [and] creating a sham business that appeared to be a bail bond company." (Id.)  The Government maintained that Lesane had a "pattern of [criminal] behavior" and "ha[d] not learned from any of his prior contacts with the criminal justice system."  (Id. at 6)  "To deter [Lesane] from future unlawful conduct and to protect the public from future crimes of [Lesane]," the Government argued, "a Guidelines sentence is warranted."  (Id.)

### 5.    Sentencing

At the October 25, 2013 sentencing proceeding, neither the parties nor the Court made any reference to Section 922(k).

The Government stated that it had "made an error" in its sentencing submission concerning Lesane's criminal history.  The Government acknowledged that the "two youthful

offender arrests did not occur on the same day." (Sent. Tr. (Dkt. No. 28) at 6) The Government went on to argue that, under United States v. Cuello, "these two youthful offender adjudications should be counted as adult convictions both for the purposes of calculating the defendant's offense level and for the purposes of calculating the defendant's criminal history category." (Id. at 8)

  At sentencing, Lesane confirmed that he had read the PSR and discussed it with his lawyer. (Id. at 3) At Lesane's request, the Court struck Paragraph 66 of the PSR, which discussed a June 4, 2010 arrest predicated on an allegation that on May 26, 2010, Lesane had "pointed a firearm at a complaining witness and stated, 'I will kill you.'" (PSR ¶ 66) The Court struck that paragraph because the conduct alleged had not led to a conviction. (Sent. Tr. (Dkt. No. 28) at 3) The parties having no other objection to the factual portions of the PSR, the Court otherwise "adopt[ed] the finding[s] of fact[] set forth in the [PSR]." (Id. at 3-4)

  The Court then addressed "whether [Lesane's two 2001 convictions for which he received youthful offender adjudication] should be treated as adult convictions for purposes of the sentencing guidelines." (Id. at 4) The Court quoted the Second Circuit's decision in Cuello: "[D]etermining whether a New York youthful offender adjudication is classified as an adult conviction under the laws of' New York for the purpose of U.S.S.G. § 2K2.1 requires district court[s] to examine the substance of the prior conviction at issue; to focus on the nature of the proceedings, the sentences received, and the actual time served." (Id. at 9 (quoting Cuello, 357 F.3d at 168-69) (internal quotation marks omitted)) The Court concluded that the two 2001 youthful offender convictions were "properly treated as adult convictions" pursuant to § 2K2.1 and § 4A1.2(d)(1). (Id. at 10) Applying the Cuello factors, the Court noted: (1) Lesane "was prosecuted in . . . an adult forum"; (2) "he was convicted of felonies" and "received sentences

amounting to felony time"; (3) and "he served those sentences in the New York State

Department of Corrections adult facility." (Id.) As set forth in the PSR, the Court counted the

"two youthful offender convictions as separat[e] offenses for [S]entencing [G]uidelines

purposes," because "the underlying criminal conduct and arrests took place on different days."

(Id. at 10)

The Court likewise adopted the other Guidelines calculations set forth in the PSR.

In doing so, the Court found that Lesane had two prior felony convictions for crimes of violence:

Robbery in the Third Degree and Attempted Robbery in the Third Degree. (Id. at 10-11) The

Court further found that the total offense level was 25; that Lesane had 13 criminal history

points; that Lesane fell within Criminal History Category of VI; and that the applicable

Guidelines range was – in light of the statutory maximum of ten years – 110 to 120 months'

imprisonment. (Id. at 11-12)

After hearing from defense counsel, Lesane, and the Government (id. at 12-28),

the Court discussed in detail the nature and circumstances of Lesane's offense (id. at 28), as well

as his personal history and characteristics, including his family background, limited education,

employment history, and extensive criminal history. (Id. at 28-29) The Court then stated that,

> [u]nfortunately, the driving factor here is [Lesane's] criminal record. This is his 14th
> conviction. He has convictions for a number of serious crimes, robbery in the third
> degree, attempted robbery in the third degree, menacing, criminal possession of a
> weapon, assault with intent to commit physical injury. He's also pleaded guilty to selling
> marijuana, heroin and crack cocaine. He has been sentenced to substantial periods of
> incarceration without demonstrable effect. Indeed, a number of [Lesane's] past offenses
> were committed while he was in prison.
>
> He also has a history of disciplinary infractions, including one disciplinary infraction
> since he's been in federal custody. The [G]overnment has also submitted tape recorded
> calls between [Lesane] and girlfriends in which a variety of crimes are discussed. These
> calls were taped after [Lesane's] June 3rd, 2010, arrest and were tape recorded while he
> was in state custody.

The substance of the calls is devastating. [The Government] recounted the plan to create what, in essence, was a phony bail bond business, that the defendant was hoping would generate enough cash to permit him to post bond. He also discussed paying another man $10,000 to take a plea concerning certain contraband, thereby permitting the defendant to avoid prosecution and a substantial jail sentence.

He also engages in conversations which appear to me to involve drug trafficking, specifically trafficking in crack cocaine. The calls are sprinkled with references to the Crips gang. The [G]overnment has also introduced photographs showing [Lesane] with handguns and with Crips colors.

(Id. at 29-30) The Court "conclude[d] that [Lesane] . . . constitute[d] a danger to the community" and "that a sentence within the guidelines is appropriate." (Id. at 30)

The Court then announced that it intended to impose a sentence of 110 months' imprisonment and three years' supervised release, and asked the parties whether they had "anything further they wish to say." (Id. at 31) Defense counsel asked that the Court take steps to ensure that Lesane would receive credit for the sixteen months that he had served in federal custody. (Id. at 32) Because Lesane – who had an open state case – had arrived from state custody on a writ, absent action by the Court, he would not receive credit for the sixteen months he had spent in federal custody. (Id. at 16-17, 33) Based on defense counsel's argument, the Court went on to impose a 94-month sentence, thereby giving Lesane credit for the sixteen months he had spent in federal custody. (Id. at 36)

The Judgment was issued on November 1, 2013. Under the heading "Title & Section" there is a reference to "18USC922(g)(1) and (k)." Under the heading, "Nature of Offense" the following is written: "Felon in Possession of a Firearm with a Defaced Serial Number." (Judgment (Dkt. No. 24) at 1)

B. **Appeal**

On October 28, 2013, Lesane filed a notice of appeal. (Notice of Appeal (Dkt. No. 26)) Lesane "challenge[d] [his] sentence on appeal, arguing that the district court

improperly treated Lesane's Youthful Offender Adjudications under New York law as adult convictions." United States v. Lesane, 579 F. App'x 51, 52 (2d Cir. 2014). The Second Circuit affirmed the judgment of this Court in a summary order issued on October 7, 2014. Id. at 53. Lesane filed the instant habeas petition on April 22, 2015. (No. 15 Civ. 3403 (Dkt. No. 1))

## II.    HABEAS PETITION

On April 22, 2015, Lesane filed a pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255. (Pet., No. 15 Civ. 3403 (Dkt. No. 1)) In his petition, Lesane argues that:

(1) a Pimentel letter provided by the Government prior to his guilty plea constitutes a plea agreement, and that the Government breached that alleged agreement by arguing at sentencing for an offense level, criminal history score, and sentencing range not set forth in the Pimentel letter;

(2) he was sentenced as if he had pleaded guilty to a violation of 18 U.S.C. § 922(k) – which makes it unlawful "for any person knowingly to transport, ship, or receive, in interstate . . . commerce, any firearm [with a defaced serial number]" – when he never admitted to knowingly possessing a firearm with a defaced serial number;

(3) his guilty plea was insufficient because he did not admit the interstate commerce element;

(4) a four-level Sentencing Guidelines enhancement for possessing a firearm with a defaced serial number was improperly imposed;

(5) his Criminal History Category was improperly calculated, because the Court relied on New York State youthful offender adjudications in calculating his criminal history score;

(6) his lawyers in the district court and on appeal were constitutionally ineffective, because they did not properly present Lesane's arguments concerning these points.

(Id.)

## III.    DEFENSE COUNSEL'S RESPONSE TO LESANE'S ALLEGATIONS

Because Lesane's petition raised ineffective assistance of counsel claims, this Court directed Lesane's prior counsel to submit affidavits addressing Lesane's allegations. (Order, No. 15 Civ. 3403 (Dkt. No. 16) at 2)

On June 1, 2016, Steven M. Statsinger – formerly of Federal Defenders of New York – submitted a declaration.  (Statsinger Decl., No. 15 Civ. 3403 (Dkt. No. 31) at ¶ 5) Statsinger represented Lesane from arraignment through his guilty plea.  See Order (Dkt. No. 4); Plea Tr. (Dkt. No. 8)  Statsinger withdrew as Lesane's counsel on November 8, 2013, because he became a New York County Criminal Court judge.  (Order (Dkt. No. 27)

Statsinger notes that Lesane had no plea agreement with the Government. Instead, the Government had merely provided a Pimentel letter.  (Statsinger Decl., No. 15 Civ. 3403 (Dkt. No. 31) at ¶¶ 8, 10, 16)  As to Lesane's complaint that the Government somehow committed misconduct during the guilty plea, Statsinger states that he "[is] confident that . . . . [he] did not perceive any prosecutorial misconduct during [the plea allocution] proceeding."  (Id. ¶ 12)  As to Lesane's complaint that Statsinger did not file a plea withdrawal motion, Statsinger states that he "ha[s] no recollection that [Lesane] ever asked [him] to move to withdraw his plea."  (Id. ¶ 14)

Christopher Flood, also of Federal Defenders, replaced Statsinger as Lesane's counsel, and appeared for Lesane at sentencing. In a February 17, 2016 affidavit, Flood does not address the issue of whether the Pimentel letter constitutes a plea agreement, as Lesane contends.[5]  (Flood Aff., 15 Civ. 3403 (Dkt. No. 52) at 1)  Flood acknowledges that his sentencing submission "[did] not focus on the issue of the calculation of [Lesane's Criminal

---

[5]  As discussed below, the Pimentel letter clearly does not constitute a plea agreement.

History Category].” (Id.)  Flood states that he instead “attempt[ed] to illustrate for the Court the significant historical challenges and mental health struggles that . . . mitigated Mr. Lesane’s conduct and counseled a variance.” (Id.)  According to Flood, “the intent [of his sentencing submission] was to present in concert with Mr. Lesane the constellation of issues of concern to him while also pressing issues which [Flood] believed could be persuasive to the Court.” (Id.)  Flood notes that, in Lesane’s lengthy submission to the Court – which is attached as an exhibit to defense counsel’s sentencing brief – Lesane discussed “the unfairness of using his prior Youthful Offender convictions.” (Id.; see also Lesane Ltr. (Dkt. No. 18-6) at 4)  Flood also points out that he “reiterated [Lesane’s] argument [about the Youthful Offender Adjudications] at the outset of [the] sentencing hearing.” (Flood Aff., 15 Civ. 3403 (Dkt. No. 52) at 1; see also Sent. Tr. (Dkt. No. 28) at 4-6)

Flood acknowledges that he did not advise Lesane, or argue to the Court, that Lesane’s guilty plea was defective in that he had not admitted that he knew that (1) the firearm he possessed had a defaced serial number; or (2) the firearm he possessed had traveled in interstate commerce.  (Flood Aff., 15 Civ. 3403 (Dkt. No. 52) at 2)  Flood contends, however, that he advised Lesane of the “maximum statutory exposure” as well as his exposure under the Sentencing Guidelines.  (id.)  Indeed, Flood and Lesane “spent many months investigating and preparing [the sentencing] submission precisely because of the risk of such penalties.” (Id.)  Flood also rejects Lesane’s claim that he did not bring to the Court’s attention “the improper use of [Lesane’s] Youthful Offender convictions to enhance his sentence.” (Id. at 3)

Finally, Flood agrees that he did not object to the Government's use at sentencing of "photographs and [Rikers Island] phone records from [Lesane's] New York City case for which he had not yet been convicted." (Id.)[6]

## IV.    LESANE'S SUPPLEMENTAL *JOHNSON* CLAIM

On June 16, 2016, CJA counsel Florian Miedel submitted a letter seeking permission to file a memorandum of law in support of Lesane's petition.  (Lesane Ltr. 15 Civ. 3403 (Dkt. No. 33) at 2 (citing Standing Order 16 Misc. 217 in the Southern District of New York))  Miedel's letter amends Lesane's petition to include a claim that his sentence was imposed in violation of Johnson v. United States, __ U.S. ___, 135 S. Ct. 2551 (2015).

On August 8, 2016, Lesane (through Miedel) filed a brief in support of his petition.  (Lesane Br., 15 Civ. 3403 (Dkt. No. 37))  In this submission, Lesane contends that his sentence is premised on a base offense level of 24, which in turn is premised on a finding that he committed two felony "crimes of violence" prior to the instant offense.  See U.S.S.G. § 2K1.1(a)(2) (stating that a defendant convicted of 18 U.S.C. § 922(g) is subject to a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of . . . a crime of violence").  Lesane argues that his "base offense level was incorrectly calculated and should have been 14, instead of 24, because his prior convictions [in the State of New York do] not constitute 'crimes of violence.'"  (Lesane

---

[6] Laurie Stein Hershey represented Lesane on appeal.  See Lesane, 579 Fed. Appx. at 51.  Hershey passed away before Lesane filed his habeas petition.  See Obituaries: Hershey, CT JEWISH LEDGER (Dec. 17, 2014), www.jewishledger.com/2014/12/hershey (last visited January 17, 2020).  Lesane alleges that Hershey was constitutionally ineffective in failing to raise the arguments he makes in his petition.  (See Pet., 15 Civ. 3403 (Dkt. No. 1) at 8, 12, 19, 29, 30, 35)  Hershey did raise Lesane's argument concerning the Court's consideration of his youthful offender adjudications, however.  See Lesane, 579 Fed. Appx. at 52-53.  According to Lesane, Hershey advised Lesane to pursue his remaining arguments in a habeas petition.  (Pet., 15 Civ. 3403 (Dkt. No. 1) at 8, 19, 24, 35)

Br., 15 Civ. 3403 (Dkt. No. 37) at 2)  Lesane contends that (1) U.S.S.G. § 4B1.2(a)(2) – the "residual clause" of the Sentencing Guidelines – is unconstitutional under <u>Johnson</u> because it does not provide a proper definition of a "crime of violence"; and (2) his prior New York State robbery convictions lack elements concerning "the use, attempted use, or threat of violent physical force."  (<u>Id.</u> (emphasis omitted))

At the time of Lesane's October 25, 2013 sentencing, the Sentencing Guidelines provided that

> [t]he term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a)(2) (2012).[7]  This "residual clause" is identical to the residual clause of the Armed Career Criminal Act (ACCA).  <u>Compare</u> U.S.S.G. § 4B1.2(a)(2)(2012) <u>with</u> 18 U.S.C. § 924(e)(2)(B)(ii).  In <u>Johnson</u>, the Supreme Court invalidated the residual clause of the ACCA, finding that it was unconstitutionally vague under the Due Process Clause.  <u>Johnson</u>, 135 S. Ct. at 2557.

## DISCUSSION

## I.    LEGAL STANDARD

### A.    Standard for Relief Under 28 U.S.C. § 2255

28 U.S.C. § 2255 provides that "[a] prisoner in custody under sentence of a [Federal] court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence . . .

---

[7]  Lesane was sentenced in accordance with the 2012 version of the Sentencing Guidelines.  The 2013 version of the Sentencing Guidelines did not take effect until November 1, 2013.  <u>See</u> <u>United States v. Qualls</u>, 25 F. Supp. 3d 248, 255 n.7 (E.D.N.Y. 2014), <u>aff'd</u>, 613 F. App'x 25 (2d Cir. 2015) (noting that the "2013 version [of the Sentencing Guidelines] . . . became effective November 1, 2013").

is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside[,] or correct the sentence." 28 U.S.C. § 2255(a). "Relief under section 2255 is available only 'for constitutional error, lack of jurisdiction, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Rosa v. United States, 170 F. Supp. 2d 388, 396 (S.D.N.Y. 2001) (quoting Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996)).

When ruling on a Section 2255 motion, the district court need not hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "To warrant a hearing, the movant 'must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief.'" Mann v. United States, 16 Civ. 7556 (KPF), 2016 WL 5900174, at *7 (S.D.N.Y. Oct. 11, 2016) (quoting Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013)). However, "[a] court need not . . . credit factual assertions [made by Petitioner] contradicted by evidence in the record of the underlying proceeding," and "when the judge who tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." Id. (internal quotation marks and citations omitted).

B.      **Ineffective Assistance of Counsel**

Courts analyze ineffective assistance of counsel claims under the framework set out in Strickland v. United States, 466 U.S. 668 (1984). "[T]o prevail on a claim of ineffective assistance of counsel . . . , a habeas petitioner must satisfy a two-part test." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). The petitioner "'must demonstrate both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."'"

Garner v. Lee, 908 F.3d 845, 861 (2d Cir. 2018) (quoting Waiters v. Lee, 857 F.3d 466, 477 (2d Cir. 2017) (quoting Strickland, 466 U.S. at 687))).

"The performance component of the Strickland test asks whether a 'counsel's representation fell below an objective standard of reasonableness.'" Kovacs v. United States, 744 F.3d 44, 50 (2d Cir. 2014) (quoting Strickland, 466 U.S. at 688). "A defense counsel's performance is unreasonable when it is so deficient that it falls outside the 'wide range of professionally competent assistance.'" Id. (quoting Strickland, 466 U.S. at 690). "When assessing counsel's performance, a court 'must judge his conduct on the basis of the facts of the particular case, "viewed as of the time of the counsel's conduct," and may not use hindsight to second-guess his strategy choices.'" Muniz v. United States, 360 F. Supp. 2d 574, 578 (S.D.N.Y. 2005) (quoting Mayo, 13 F.3d at 533 (quoting Strickland, 466 U.S. at 690)); see also Parisi v. United States, 529 F.3d 134, 141 (2d Cir. 2008) (warning of the risk that "in the illuminating light of hindsight, [courts] might look back and project ex post knowledge of consequences on the attorney's ex ante selection of one path among the many available to him"). Accordingly, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Parisi, 529 F.3d at 141 (internal quotation marks and citation omitted).

To establish prejudice under the second Strickland prong, a defendant "must demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Garner, 908 F.3d at 861-62 (quoting Strickland, 466 U.S. at 694)).

## II. ANALYSIS

### A. Application of *Johnson* to the Sentencing Guidelines Residual Clause

Lesane argues that his sentence was imposed in violation of his due process rights, citing the Supreme Court's ruling in Johnson. Lesane argues that Johnson applies here because the ACCA's residual clause (which the Supreme Court found unconstitutional) is "indistinguishable" from the residual clause of U.S.S.G. § 4B1.2(a)(2). (Lesane Ltr., 15 Civ. 3403 (Dkt. No. 33) at 2)

In Johnson, the Supreme Court invalidated the ACCA's residual clause (18 U.S.C. § 924(e)(2)(B)(ii)) on the ground that it was unconstitutionally vague under the Due Process Clause. Johnson, 135 S. Ct. at 2557. In Beckles v. United States, 137 S. Ct. 886 (2017), however, the Supreme Court held that "the advisory Sentencing Guidelines are not subject to a due process vagueness challenge," and that accordingly "[U.S.S.G.] § 4B1.2(a)'s residual clause is not void for vagueness." Beckles, 137 S. Ct. at 897; see also United States v. Hendricks, 921 F.3d 320, 332 (2d Cir. 2019) (noting that, in Beckles, the Supreme Court "concluded that the Sentencing Guidelines are not subject to void-for-vagueness challenges") (citing Beckles, 137 S. Ct. at 886). The Supreme Court's rationale was that "[u]nlike the ACCA, . . . the advisory Guidelines do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." Beckles, 137 S. Ct. at 892. Given Beckles, Lesane's reliance on Johnson is misplaced.[8]

---

[8] In any event, Lesane's convictions for Robbery in the Third Degree and Attempted Robbery in the Third Degree are "crimes of violence" under the "force clause" of U.S.S.G. § 4B1.2(a)(1). See United States v. Moore, 916 F.3d 231, 240 (2d Cir. 2019) ("New York robbery in the third degree is categorically a crime of violence under the force clause of U.S.S.G. § 4B1.2(a)(1)"); United States v. Pereira-Gomez, 903 F.3d 155, 166 (2d Cir. 2018) ("'robbery' as it is defined in N.Y. Penal Law § 160.00, qualifies as a 'crime of violence'"); Massey v. United States, 895 F.3d 248, 250 (2d Cir. 2018) ("Spencer held that attempted New York third-degree robbery was a

Accordingly, to the extent that Lesane's petition is premised on the argument that U.S.S.G. § 4B1.2(a)(2) is unconstitutionally vague, his petition will be denied.

**B.    There Was No Plea Agreement**

Lesane argues that the Government's Pimentel letter constitutes a plea agreement, and that the Government breached that agreement by seeking, at sentencing, an offense level, criminal history score, and sentencing range higher than that set forth in the Pimentel letter. (Pet., 15 Civ. 3403 (Dkt. No. 1) at 5-11, 31-35).  This is a frivolous argument.

The first line of the Pimentel letter reads:   "**This document is not a plea agreement.**"  (See Pimentel Ltr., 15 Civ. 3403 (Dkt. No. 39-1)) (emphasis in original) Accordingly, Lesane's argument that the Pimentel letter is a plea agreement is utterly unfounded.

The Pimentel letter also clearly states that the Government has reserved its right "to change its position at any time as to the appropriate Guidelines calculation in this case . . . and/or to present to the Court . . . any and all facts and arguments relevant to sentencing that are available to the Office at the time of sentencing."  (Id. at 4)  As stated in the letter, the Government does "not make any promise or representation as to what sentence the defendant will receive."  (Id.)  The Pimentel letter further states that it "does not and cannot bind . . . the Court . . . as to determinations of the correct application of the Guidelines in this case," and that "the sentence to be imposed upon [Lesane] will be determined solely by the Court."  (Id.) During the Rule 11 proceeding, Lesane acknowledged that the Guidelines range calculated in the Pimentel letter was not binding on the Court.  (Plea Tr. (Dkt. No. 8) at 8-9)

---

crime of violence under the USSG's force clause.") (citing United States v. Spencer, 955 F.2d 814, 820 (2d Cir. 1992)).  Because Lesane had two prior convictions for "crimes of violence," his base offense level was properly calculated to be 24.

Because there was no plea agreement, and because the <u>Pimentel</u> letter makes clear that it does not bind the Government or the Court, Lesane's arguments that the Government breached a "plea agreement" are not persuasive.[9]  <u>See</u> <u>Cirineo v. United States</u>, No. 03 Civ. 6327 (RCC), 2005 WL 1214320, at *3 n.2 (S.D.N.Y. May 19, 2005) (denying habeas petition where petitioner argued that Government had breached a <u>Pimentel</u> letter); <u>Pena v. United States</u>, No. 95 Cr. 130 (AGS), 2000 WL 1568322, at *3 (S.D.N.Y. Oct. 20, 2000) ("Pena . . . alleges that the sentence violated his plea agreement because it was higher than the range recommended in the plea agreement or <u>Pimentel</u> letter.  This argument is frivolous.  Both of those documents make clear that they could not bind the Court. . . . The <u>Pimentel</u> letter also makes clear that the government could change its position regarding the appropriate sentence at any time. . . . Pena also stated under oath that he understood that he was bound by his plea even if the Court imposed a sentence outside of any recommendations in his plea agreement or <u>Pimentel</u> letter.").

When reviewing claims that the Government has breached a plea agreement, the Second Circuit looks to "the precise terms of the plea agreement and to the parties' behavior" to "determine what 'the reasonable understanding and expectations of the defendant [were] as to the sentence for which he had bargained.'"  <u>United States v. Wilson</u>, 920 F.3d 155, 163 (2d Cir. 2019) (quoting <u>Paradiso v. United States</u>, 689 F.2d 28, 31 (2d Cir. 1982)).  "In the specific context of an alleged breached <u>Pimentel</u> estimate – because a <u>Pimentel</u> estimate is no more than that, an estimate – the Government does not violate a defendant's reasonable expectations simply

---

[9]  The cases cited by Lesane have no application here, because they involve plea agreements rather than <u>Pimentel</u> letters.  <u>See</u> Pet., No. 15 Civ. 3403 (Dkt. No. 1) at 7, 11; <u>see also</u> <u>United States v. Roberts</u>, 624 F.3d 241 (5th Cir. 2010) (vacating sentence where prosecutor recommended higher base offense level at sentencing than base offense level stipulated in plea agreement); <u>United States v. Diaz-Jimenez</u>, 622 F.3d 692, 696 (7th Cir. 2010) (vacating sentence where prosecutor committed "serious breach of the plea agreement" by recommending higher sentence than that specified in plea agreement).

because it deviates from the estimate. A defendant's reasonable expectations may be breached, however, where the Government's deviation 'produce[s] serious unfairness" for the defendant.'" Id. at 163 (quoting United States v. Habbas, 527 F.3d 266, 271 (2d Cir. 2008)). Serious unfairness exists where, for example, "the Government acts in bad faith (either in its initial calculation of the Pimentel estimate or in its later change of position) or if 'the [G]overnment's change of position (without new justifying facts) changed the defendant's exposure so dramatically as to raise doubts whether the defendant could reasonably be seen to have understood the risks of the agreement.'" Id. (quoting Habbas, 527 F.3d at 271).

No such unfairness is present here. The estimated Guidelines range set forth in the Pimentel letter did not account for Lesane's youthful offender adjudications, of which the Government was unaware – likely because they were sealed. Moreover, the Pimentel letter warned Lesane that the Government's Guidelines calculation could change based on new information. (Pimentel Ltr., 15 Civ. 3403 (Dkt. No. 39-1) at 4) There is no reason to suspect that the Government acted in bad faith.

Lesane also argues that he "demonstrate[d] acceptance of responsibility, to the satisfaction of the Government," and thus is entitled to the sentencing range set forth in the Pimentel letter. (Pet., 15 Civ. 3403 (Dkt. No. 1) at 5, 9) Lesane's acceptance of responsibility entitles him only to a three-level reduction in offense level, however. (See Pimentel Ltr., 15 Civ. 3403 (Dkt. No. 39-1) at 2) Acceptance of responsibility does not require the Government or the Court to apply an incorrect Guidelines calculation. Indeed, as noted above, the Pimentel letter states that it does not bind either the Government or the Court to a particular sentencing range. In any event, Lesane received a three-level reduction for acceptance of responsibility at sentencing. (Sent. Tr. (Dkt. No. 28) at 11-12)

Lesane further argues that the Government's deviation from the <u>Pimentel</u> letter rendered his plea "involuntary." (Pet., 15 Civ. 3403 (Dkt. No. 1) at 9) "The standard for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" <u>Urena v. New York</u>, 160 F. Supp. 2d 606, 610 (S.D.N.Y. 2001) (quoting <u>Ventura v. Meachum</u>, 957 F.2d 1048, 1058 (2d Cir. 1992)). A plea is involuntary where the defendant lacks "'knowledge of the nature of the constitutional protections he will forgo by entering his plea.'" <u>Marcelin v. Garvin</u>, 97 Civ. 2996, 1999 WL 977221, at *5 (S.D.N.Y. Oct. 26, 1999) (quoting <u>Matusiak v. Kelly</u>, 786 F.2d 536, 543 (2d Cir. 1986)). A guilty plea "'entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper.'" <u>Bousley v. United States</u>, 523 U.S. 614, 619 (1998) (quoting <u>Brady v. United States</u>, 397 U.S. 742, 744 (1970) (internal alterations omitted)).

Here, when Judge Gorenstein asked whether Lesane "underst[ood] that even if [he is] surprised or disappointed by [his] sentence, [he would] still be bound by [his] guilty plea," Lesane answered, "Yes." (Plea Tr. (Dkt. No. 8) at 8) Lesane further stated that he had not been threatened to plead guilty, that he had not received any promises in return for his plea, and that his plea was voluntary and made of his own free will. (<u>Id.</u> at 8-10) Lesane also affirmed that he had discussed the guilty plea with his attorney and that he understood that this Court would not be "bound by the calculation in [the <u>Pimentel</u> letter]." (<u>Id.</u> at 5, 9) In sum, Lesane voluntarily agreed to be bound by his guilty plea regardless of the sentence imposed. (<u>Id.</u> at 8-9)

To the extent that Lesane argues that the Government breached an agreement with him, or misled him as to his sentencing exposure or the application of the Sentencing Guidelines, his petition will be denied.

### C. Lesane Was Sentenced on the Basis of His Guilty Plea to Violating 18 U.S.C. § 922(g), and the Four-Level Sentencing Guidelines Enhancement for a Defaced Serial Number Was Properly Imposed

Lesane argues that his guilty plea was improperly accepted because he was not apprised of the elements of a violation of 18 U.S.C. § 922(k). (Pet., 15 Civ. 3403 (Dkt. No. 1) at 14-19) To satisfy Rule 11, courts must "ensure that defendants understand the elements of the offenses to which they are pleading guilty." United States v. Lloyd, 901 F.3d 111, 121 n.6 (2d Cir. 2018). "Without being fully informed of the nature of the offense, and without an established factual basis for finding that one of its elements was satisfied, it is hard to imagine how a defendant's plea could be knowing and voluntary." United States v. Balde, 943 F.3d 73, 95 (2d Cir. 2019). "[T]o sustain a conviction under § 922(k), the government must prove the defendant's knowledge that the serial number had been removed." United States v. Lewter, 402 F.3d 319, 323 (2d Cir. 2005) (citing United States v. Haynes, 16 F.3d 29, 33-34 (2d Cir. 1994)).

Here, Lesane was not advised of the elements of a Section 922(k) charge, because no one understood him to be pleading guilty to a Section 922(k) charge. The prosecutor laid out the elements of a Section 922(g) offense; the magistrate judge elicited a factual allocution from Lesane that satisfied the elements of a Section 922(g) offense; and the defense lawyer confirmed that the defaced serial number allegation was not an element of the Section 922(g) offense. (Plea Tr. (Dkt. No. 8) at 10-11) Accordingly, Lesane did not plead guilty to a violation of 18 U.S.C. § 922(k); he instead pled guilty to a violation of 18 U.S.C. § 922(g). The references to Section 922(k) in the PSR and in the judgment are errors.

The erroneous reference to Section 922(k) in the PSR did not affect the sentence imposed on Lesane, however, and the reference to Section 922(k) in the judgment is a clerical error. See Fed. R. Crim. P. 36. This Court sentenced Lesane based on his guilty plea to a Section 922(g) offense. Having reviewed and approved the guilty plea taken by the magistrate judge (Dkt. No. 23), this Court was well aware that he had not pled to a Section 922(k) violation and that the defaced serial number allegation was not an element of the Section 922(g) offense. Because the reference to Section 922(k) in the judgment was a clerical error, it can be corrected at any time. See Fed. R. Crim. P. 36 ("the court may at any time correct a clerical error in a judgment"); see also Marmolejos v. United States, 789 F.3d 66, 71 (2d Cir. 2015) ("Rule 36 permits the correction of typographical errors.") (citing United States v. Banol-Ramos, 516 Fed. Appx. 43, 48 (2d Cir. 2013) (instructing district court on remand to correct judgments pursuant to Rule 36 to identify the violated section of Title 18 U.S.C. as "2339B" rather than "2239B"); United States v. Ervasti, 201 F.3d 1029, 1046 & n. 16 (8th Cir. 2000) (directing district court on remand to correct the judgment pursuant to Rule 36 where the pertinent attachment to the judgment clearly revealed that the judgment overstated the ordered restitution amount by $2 million)); United States v. Alexander, 860 F.2d 508, 515 (2d Cir. 1988) ("Since the plea agreement and other parts of the record make it clear that Alexander intended to plead guilty to count 2 and nowhere indicated a willingness to plead guilty to RICO conspiracy, and since the conspiracy count of the indictment has been dismissed, the references to § 1962(d) in the agreement and the judgment appear to be clerical errors that may be corrected at any time, see Fed. R. Crim. P. 36."); Cherry v. United States, 489 F. Supp. 2d 372, 374-75 S.D.N.Y. 2007) (amended judgment issued to correct erroneous date of offense set forth in judgment).

Accordingly, an amended judgment will be filed, but no change will be made in Lesane's sentence.

As to the four-level enhancement imposed pursuant to U.S.S.G. § 2K2.1(b)(4)(B) for possessing a firearm with a defaced serial number, this Court committed no error. Section 2K2.1(b)(4)(B) of the Guidelines provides that where a defendant is convicted of "[u]nlawful . . . [p]ossession . . . of [f]irearms[,] . . . [if] any firearm . . . had an altered or obliterated serial number, [the base offense level should] increase by 4 levels." U.S.S.G. § 2K2.1(b)(4)(B) (2012) (emphasis omitted). Under Section 2K2.1(b)(4)(B), this enhancement applies regardless of whether the defendant knew that the firearm he possessed had a defaced serial number: "Although 18 U.S.C. § 922(k), which criminalizes the possession of a firearm with an obliterated serial number, contains a scienter requirement. . . . Congress has not required . . . that the § 2K2.1(b)(4) sentencing enhancement contain a scienter requirement." United States v. Williams, 49 F.3d 92, 93 (2d Cir. 1995) (citing Haynes, 16 F.3d at 33-34); see also U.S.S.G. § 2K2.1(b)(4)(B), cmt. Application Note 8(B) (2012) ("Subsection (b)(4) applies regardless of whether the defendant knew or had reason to believe that the firearm . . . had an altered or obliterated serial number."). Accordingly, Lesane's argument that he had no knowledge of the defaced serial number is irrelevant to the applicability of the four-level enhancement. United States v. Brown, 514 F.3d 256, 269 (2d Cir. 2008) (affirming sentence and noting that commentary to U.S.S.G. § 2K2.1 provides for enhancement "'whether or not the defendant knew or had reason to believe that the firearm . . . had an altered or obliterated serial number'").

### D.    No Allocution From Lesane as to Effect on Interstate Commerce Was Required

Lesane also argues that his guilty plea is insufficient because – during the Rule 11 proceeding – he did not admit to knowing that the firearm he possessed had traveled in interstate

commerce. (Pet., 15 Civ. 3403 (Dkt. No. 1) at 16) Lesane contends that, as a result, there is no evidence of the required nexus to interstate commerce. (Id.)

18 U.S.C. § 922(g) provides that "[i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g) (emphasis added). "[U]nder § 922(g)(1), 'proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy the statutorily required nexus between the possession of a firearm by a convicted felon and commerce.'" United States v. Palozie, 166 F.3d 502, 504 (2d Cir. 1999) (citing United States v. Sorrentino, 72 F.3d 294, 296 (2d Cir. 1995) (quoting Scarborough v. United States, 431 U.S. 563, 564 (1977))). "[T]o satisfy the interstate commerce element of § 922(g), the prosecution need only make the de minimis showing that the possessed firearm previously traveled in interstate commerce." Id. at 505.

Here, during the Rule 11 proceeding, the Government "proffer[ed] that the gun that [Lesane] possessed was not manufactured in New York and, therefore . . . traveled through interstate commerce." (Plea Tr. (Dkt. No. 8) at 11) Statsinger, Lesane's counsel at the time of the guilty plea, did not object to the Government's proffer; indeed, he stated that "[he and Lesane] ha[d] no reason to contest that." (Id.) Under these circumstances, the Government's proffer was sufficient to demonstrate the required nexus to interstate commerce. See United States v. Andrades, 169 F.3d 131, 136 (2d Cir. 1999) (a "court may rely on defendant's own admissions, information from the government, or other information appropriate to the specific case" when accepting a plea); Ortiz v. United States, No. 3:06 Civ. 1486 (AWT), 2007 WL

1322377, at \*3 (D. Conn. May 7, 2007) ("Here, the government proffered at the time of the guilty plea that its proof at trial would be that the make and model of firearm charged in the indictment was manufactured in the State of Ohio and never had been manufactured in the State of Connecticut.  This evidence, which was not contested by the Petitioner, was sufficient to satisfy the interstate nexus requirement of the statute."); Hardy v. United States, No. 10 Cr. 1123 (JSR) (AJP), 2012 WL 843384, at \*7 (S.D.N.Y. Mar. 14, 2012); ("Because the Government proffered that . . . it would present testimony . . . which would satisfy the interstate commerce element, Hardy's claim that [the court] lacked a factual basis for accepting his guilty plea should be DENIED.") (emphasis in original).[10]

### E.  Ineffective Assistance of Counsel

Lesane has not demonstrated that any of his lawyers were constitutionally ineffective, because he has not shown that there is any merit to the arguments he raises now.  For the reasons discussed above, Lesane's argument that the Pimentel letter is a plea agreement is false on its face.  There was also no basis for alleging that the Government acted in bad faith, because the youthful offender adjudications were not known to the Government at the time the Pimentel letter was prepared.

---

[10]  Lesane also argues that the Court should not have considered at sentencing Lesane's tape-recorded phone calls while at Rikers Island, and photographs showing Lesane with handguns and wearing Crips colors.  (Pet., 15 Civ. 3403 (Dkt. No. 1) at 34; Sent. Tr. (Dkt. No. 28) at 29-30) "A sentencing judge," however, "has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime.  In addition to taking into account the Guidelines range, the district court must form its own view of the 'nature and circumstances of the offense and the history and characteristics of the defendant.'"  United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (quoting 18 U.S.C. § 3553(a)(1)).  Moreover, 18 U.S.C. § 3661 states that "'[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.'"  United States v. Mumuni Saleh, --- F.3d ----, 2019 WL 7196814, at \*14 (2d Cir. Dec. 27, 2019) (quoting 18 U.S.C. § 3661).  Accordingly, the Court's consideration of these materials was appropriate.

While Lesane's allocution is not sufficient to support a conviction under 18 U.S.C. § 922(k), the Court did not accept a guilty plea to a Section 922(k) violation and Lesane was not sentenced for a Section 922(k) violation.  The judgment's reference to Section 922(k) is a clerical error that will be corrected in an amended judgment.

For reasons discussed above, Lesane's guilty plea to a Section 922(g) offense was sufficient.

The four-level Sentencing Guidelines enhancement for possessing a firearm with a defaced serial number was properly imposed, because the Government was not required to show that Lesane knew that the firearm he possessed had a defaced serial number.

The youthful offender adjudications were properly treated in calculating Lesane's criminal history score, as the Second Circuit ruled in rejecting Lesane's direct appeal.

Finally, Johnson v. United States has no application to the Sentencing Guidelines.

In sum, Lesane has not shown that any of his attorneys provided constitutionally ineffective assistance of counsel.

**CONCLUSION**

For the reasons stated above, Lesane's Section 2255 petition is granted to the extent that the Court will file an amended judgment removing any reference to 18 U.S.C. § 922(k). The petition is otherwise denied.

Because Lesane has not made a substantial showing of the denial of a constitutional right, no certificate of appealability will issue under 28 U.S.C. § 2253(c)(1)(A). This Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a non-frivolous issue). The Clerk of Court is directed to mail a copy of this order to Petitioner by certified mail and to close this case.

Dated: New York, New York
      January 20, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge